Good morning, Your Honours. May it please the Court, Thomas Siegel for Appellant Robert LaCour. So, I'll start with the mailbox rule. The mailbox rule, well, first of all, let me say I'll reserve five minutes for rebuttal. I don't think the mailbox rule was properly applied here because when you think about the mailbox rule, you think about an individual who says, I took the envelope, I addressed it to Robert LaCour, I put a stamp on it and I deposited it in the mailbox. What you have here is piecemeal declarations, some of which were submitted in reply, with a declarant from Marshalls or TJX Corporation saying essentially, we provided a list with all of our employees, we gave it to the vendor, and you then have a declaration from the vendor which says the company took the list and we did the mass the district court put it, unequivocal denial, should carry the day. But even if we grant that the mailing occurred and that he received it, the rule that really comes into play here is the rule of contractual interpretation about when silence can be deemed to be sent to an agreement. Counsel, can I bring you back to the mailbox rule? I guess one of the maybe confusing aspects of the district court's order was whether it was applying a federal common law mailbox rule or the California mailbox rule. Because the court seemed to operate from the premise that a simple denial that the mailing was received was insufficient to rebut it. But under California, as I understand it, a simple denial would be enough, and then you need to have a trier of fact decide and weigh the evidence and decide whether the mailing did in fact take place or not. Is it your view that the court applied a federal common law mailbox rule or the California rule? I think the court did apply the federal rule. I think the case that the What in the record makes you say that the court applied the federal mailbox rule? It is the case that the district court cited to, and it's an ERISA case, if I can find it. You're on EER 7, Shikori against Bank of America? That's right, Your Honor. Shikori versus Bank of America. And that is a federal ERISA case, and there's a subsequent case, I believe, called Pronos, a district court decision, which points out that because that's an ERISA case, it applies the federal version of the mailbox rule, not the California version. And so, I mean, I don't know. So what that means, I think, is the district court just said, well, this denial is not enough by itself to rebut the presumption. And so I don't think the district court weighed the evidence. I don't think the district court made a finding of fact. And, you know, we would submit that had the district court made a finding of fact, that finding should have been that Mr. LaCour's denial, which, after all, was direct evidence. He is the person who knows whether he received it. He's certainly a recipient witness, and it's not clear that there's actually any recipient witness to the mailing to Mr. LaCour. Mr. LaCour's declaration of denial should have prevailed under these facts. So suppose we agree with you on that, and we think the district court was wrong to conclude that he had received the mailing. There was also this sort of series of meetings and the his declaration conspicuously does not deny that he received. So what do we do with all of that? Well, let's start with the postcard, because what I would say about the postcard is that, you know, this postcard has never been introduced into evidence. We don't know what it says. And what Mr. LaCour did in his declaration was he attached the arbitration agreement, and he said, I've never seen this before. And so, you know, I think it's difficult to deny receiving a postcard that you haven't seen, right? And as far as the meetings, I mean, look, I understand the district court's order, the footnote, as at least implicitly rejecting any reliance on either the meetings or the website. I mean, the district court expressly pointed out that Mr. LaCour's visit to the website was several years after the deadline for him to opt out of the agreement had occurred. So that part of it is certainly, I think, not a strong point for marshals. And as far as the in-store meetings, I mean, there is no evidence that he attended the meetings. They're trying to make a leap, a leap of logic that these meetings, according to the declaration of Sharon Simons, were scheduled to occur on the following dates. Mr. LaCour's time and punch records show that he was in the store on those dates. Therefore, he attended the meetings. I don't think that's really a reasonable inference, certainly not when weighed against Mr. LaCour saying I don't recall attending any such meetings. So... But he didn't say he didn't attend. He just said he didn't recall. Yeah, I think he said he didn't recall. I think that's right. And what I think that in a way leads us back to this same issue, you know, if we assume he received the letter. And that is, when is silence sufficient to indicate assent? And the Gentry decision, actually, even though it's usually cited for something completely different, has a very detailed discussion of this, talking about the restatement of contracts and saying that in order for silence to constitute assent, there has to be some conduct which leads the person making the offer to believe that by being silent, in this case by not opting out, they're assenting to it. And in Gentry, the employee receives the arbitration agreement as part of an employee handbook. There's an acknowledgment form for the employee handbook. And the acknowledgment form says something like, you know, by signing this, I agree that I understand that if I do not opt out within 30 days, I will be bound by the arbitration agreement. So that was what was sufficient in Gentry. We do not have anything like that here. And I think this is actually a through line in a number of different cases that we cite to this court's Chabola v. Class Pass decision. You know, admittedly, a very different context. You know, when does a click wrap agreement on a website bind the consumer? But what this does, a website, the only screens that are relevant for determining the assent issue are screens where arbitration is mentioned and there is something, you know, like a check box or something where the consumer can indicate assent. You know, similarly, again, a different context, but the Mendoza v. Valley Transportation case, Mendoza v. Valley Transportation, dealing with an employee handbook. And, you know, similar to Chabola, it says the pages that mentioned arbitration did not have any signature line, did not have anything where the employee could indicate their assent to the agreement. So just, I mean, going back to the postcard for a moment, you're right that the postcard itself does not appear to be in the record, or at least I didn't see it there. But we have the declaration from Ms. Simons, I guess, that says that the company sent a follow-up postcard to every associate's home address on February 15th to remind them to take action to opt in or out of the arbitration agreement. I mean, under the case law that you were just talking about, if he actually got that postcard and then took no action, didn't investigate the agreement, I take it even under those cases that would be enough to have him bound by it, wouldn't it? No, I actually think that under those cases that would not be enough because the missing step is some affirmative conduct to indicate assent. But isn't the conduct continuing to be employed there, even after having learned about the new policy? I mean, I would disagree with that because, I mean, look, an employer expects their employees to show up to work, right? Showing up to work is the normal thing that people do, right? And if he had, for example, received the postcard but it got misplaced or he didn't understand it, he's going to show up to work. People show up to work. I don't think, and again, in Gentry, it was the signature page on the handbook that was dispositive. And so that would be opposition that just showing up to work in and of itself is not enough. And don't the California cases also talk about how arbitration provisions have to be clear and conspicuous and, you know, sort of pointed to in a more direct kind of way? Do we know anything about the postcard, about what the contents of it were or how specific it was as to the arbitration provision that Marshalls was trying to roll out? No, we don't. And of course, we don't know, you know, what it said and how that would have been understood by somebody who didn't receive the original arbitration agreement. Was that issue raised in the district court regarding the content of the postcard and how obvious it was? Was that issue raised? No, I don't think so. But I don't think the district court addressed it in the order either. Well, if it wasn't raised, the district court wouldn't necessarily address it, right? Yeah. I mean, there was no reason for the district court to address it, I don't think. But I don't think the district court in its order relied in any way on the postcard. I don't think the district court said, well, even if he didn't receive the letter, he received the postcard. I don't believe that's in the order. So I will, unless the Court has more questions. Do you agree with the proposition, which I think your friends on the other side say, that in California, someone in the position of Mr. LaCour who can be on constructive notice of the policy, even if he didn't know about it, if a reasonably prudent person in his position would have found out about it, that is enough. Do you agree with that as a statement of California law? I'm not sure that I do. I mean, I understand the idea of constructive notice. But, you know, I mean, I think that would be a situation where, you know, for example, he checked a box saying, I acknowledge the arbitration agreement, and then, you know, provides a declaration saying, well, I didn't read it, I didn't know what it meant. That, I think, would be a constructive notice situation, you know, not a situation where he never received the agreement in the mail. And so I'll reserve the rest of my time, unless the Court has more questions. All right. It appears not. Thank you, Counsel. Thank you. May it please the Court, my name is Brad Schwan, and I represent the defendants and appellees, Marshals of California, LLC, Marshals of Massachusetts, Inc., and the TJX Companies, Inc., which I'll refer to collectively as Marshals. Your Honors, in this combined appeal of the District Court's orders compelling arbitration of Appellant LaCour's wrongful termination, retaliation, and intentional infliction of emotional distress claims to arbitration, in what we refer to as the individual action, and dismissing his class claims and compelling his individual wage and hour claims to arbitration, what we refer to as the class action, the District Court reviewed the record evidence in this case and made two separate and distinct, yet equally important, findings. LaCour had notice of the arbitration agreement, and, number two, his failure to opt out, combined with his continued employment, constitutes implicit consent to the agreement. Based on these two findings, the Court correctly held that, quote, Marshals has met its burden of proving the existence of an agreement. Both parties are bound to it. End quote. Counsel? Yes. Do you agree with opposing counsel that the District Court applied the federal rule as opposed to the California rule regarding the mailbox? I agree that the District Court applied the mailbox rule, and I disagree that there's a difference between the two. Well, did it apply federal law or California law in making that ruling? I believe that it applied the mailbox rule, and I don't think there's a difference between the federal mailbox rule and what's been referred to as the California mailbox rule. Okay, so if we disagree with you and think there is a difference between the California rule, the California law, and federal law, do you lose? No. I think that the Court applied the mailbox rule in a way that the result would be the same regardless, but I don't believe that there really is a difference between the two. If California law says that a denial is sufficient to rebut the presumption of delivery, how does that affect your argument? I don't think that's what California law says. The Craig v. Brown and Root case is the only case that discusses this premise. It's a court of appeal case in California, and it states that, it uses the phrase that the presumption disappears, but I don't think that in operation acts any differently than the federal mailbox rule. Essentially what happens with respect to the mailbox rule is the difference between, here's what I would say is the only difference between the federal and the State when we talk about the mailbox rule, is that the mailbox rule in federal common law is created by judges and case law. California's mailbox rule is created by statute. But the thing that is created by the mailbox rule is the rebuttable presumption. But how the evidence is weighed is the same in both State and federal law. So in State court, bear with me one second. So the California evidence code, section 641, says a letter correctly addressed and properly mailed is presumed to have been received in the ordinary course of mail. That's the mailbox rule. It creates the rebuttable presumption. Ginsburg. Right. And what is sufficient to rebut that presumption in California? Well, so California evidence code section 604, discussing rebuttable presumptions generally, it says the effect of a presumption affecting the burden of producing evidence is to require the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced which would support a finding of its nonexistence, in which case the trier of fact shall determine the existence or the nonexistence of the presumed fact from the evidence without regard to the presumption. So that's what California says. So the evidence in this case was the declaration from the plaintiff that he didn't receive it. Correct. Correct. And so what did — what weighing of the evidence did the district court do in your opinion? It weighed the declaration of Sharon Simons and the declaration of John Quinlan against the declaration of the plaintiff. And it said — and to be clear, the court did weigh that evidence. The appellant is not wrong in that in a footnote the court addressed the evidence that, you know, with respect to the meetings and the websites and discounted it. But in fact, that proves that the court was engaging in weighing of the evidence as opposed to some sort of rote application of a differing mailbox rule. So what I would say is — But that doesn't seem to be what the Court said. I mean, I'm looking at page 8 of the ER, page 6 of the order, and he says, you know, you've got the testimony of mailing creates a presumption of receipt, right? Everybody agrees that's how the presumption works. Then he says the court's only rebuttal is his bare-bones declaration that he never received the agreement. This simple — I'm skipping a little. This simple denial is insufficient to overcome the presumption. So that doesn't sound like, you know, the presumption disappears and now I'm weighing the evidence and finding that he got it. That sounds like there's a presumption and I'm applying the presumption because this declaration isn't enough to get me past the presumption. No. I think what's happening is that this Court, along with the other district courts, in applying the mailbox rule, weighing the evidence and saying, in light of evidence that a mailing was, in fact, mailed, in our view, the existence of — and this is where it's important that the Court doesn't just say there's just a declaration where the plaintiff says X. The Court calls it the bare-bones declaration. This is an adjective describing his weight of the evidence. He's viewing this declaration as nothing more than bare-bones. But what sort of declaration of non — I mean, if you didn't get a letter, I don't know what more — what elaboration could you provide other than I didn't get this letter? I mean, I — I mean, there's, I suppose, any number of things. I check my mail every day. I look at the mail. I'm aware when I get things from a company, I do this. When I get letters, I look at every single one that's there to make sure that I didn't throw something away. There's all sorts of things that could exceed a bare-bones denial. And this is actually what's important here, is what's clear from the record is the Court did review and weigh the evidence, and beyond — and this Court shouldn't overturn that finding, absent some sort of clear — But what finding was it — I guess I share the confusion. What finding did it make about the mailing? It applied a presumption. No. It made a finding that the mailing occurred, because that's the first step for the rebuttable presumption. Where? Because it's — I mean, Judge Miller just read the sentence. Page 8 of the ruling from which we were just speaking. Okay. Marshalls presents the testimony of TJX's vice president, who oversaw the mailing rollout, provided evidence of paid postage, and corroborated LeCour's home address, which LeCour does not dispute was his residence at the time. LeCour countered that the testimony of Quad, the company who handled the physical mailing, was necessary. In response, Marshalls provided Quad's testimony to create a presumption that LeCour received the agreement. Right. That's the presumption.  That's the operation of the presumption. Well, right, but it's evidence that leads to the presumption. If there wasn't evidence, there would be a presumption. And LeCour's only rebuttal is his bare-bones declaration that he never received the agreement. But as I read Craig, it said once you have a denial, the trier of fact must then weigh the denial of receipt against the inference of receipt and decide whether or not the letter was received. And LeCour did that. The court is saying a bare-bones denial is not enough to overcome a presumption. It's not weighing evidence as to, well, now I've got two competing versions, and I decide, I make a finding that the mailing did in fact occur. But that's what all the district courts have done when they've applied this presumption and then subsequently weighed the evidence. And this court was following the lead of other courts in the Ninth Circuit.  And that may be, but I wonder if the courts are not applying the California mailbox rule instead of a sort of misapplied Federal common law rule. Well, but again, I dispute that there is a different rule. So going back to the California rule of evidence, with California evidence code section 604 discusses this and says the effect of a presumption affecting the burden of producing evidence is to require the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced, which would support a finding of its nonexistence, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption. And that's what the court did here. And as Judge Rawlinson pointed out, a denial, his declaration that he denies it, is evidence to rebut the presumption. But the district court didn't cite evidence code 604, but also said a simple denial is not enough. Correct. The final sentence of evidence code section 604 says nothing in this section shall be construed to prevent the drawing of any inference that may be appropriate. And that's the whole underpinning of the mailbox rule in general. The idea is, yes, we recognize that there is a situation when someone puts something in the mail that we don't always have direct evidence to establish that, and so we've created this rebuttable presumption. Thereafter, once evidence is introduced to contradict that, then the court needs to engage in a weighing exercise and make the determination. That is the California rule, along with the Federal rule. It's just that the district courts have repeatedly held, when we're engaging in this exercise of weighing the evidence, we have historically found that a bare-bones declaration that does nothing more than deny receipt, when I compare that to evidence that has established that, in fact, the mailing did occur, district courts have repeatedly held, in that instance, we're going to find that that's not, that evidence is not sufficient to account for that. Let's assume that we don't agree with that position. Where does that leave you with this? That leaves us with the case the plaintiff cited, which is Craig v. Brown Root, where this exact same thing occurred. So the court articulated what I think is nothing different than the mailbox rule articulated in the Federal rules, but articulated what it's deemed this California mailbox rule, and that presumption then disappeared. And what happened in Craig v. Brown Root is the court's application of the facts to the evidence in front of it, and it determined that, in fact, receipt occurred. And then it said, so we can't disturb that finding. But I guess my question is, if we conclude that the district court did not make a factual finding as to the mailing, do we rescind this case back for the court to make that threshold factual determination? But they did make the court did clearly make a finding. Let me ask it a third time. If we don't agree with your position that the court made a factual finding, if it didn't, where does that leave you? We wouldn't even be talking about the mailbox rule, because the mailbox rule only comes into play. I guess the question, does the district court's ruling, is it based wholly on the mailbox rule and how it applied it? For the portion of receipt, application of the mailbox rule is what occurred for the court to reach the conclusion that there was an agreement. But it was a two-part ruling. And I would like, in my remaining time, to address this issue about assent and Gentry. So Gentry is a California Supreme Court case. And what it did discuss is, in the particular instance, an employee received an agreement and an acknowledgment and signed that acknowledgment and said, I realize that if I continue my employment, that I'll be bound to this agreement. Gentry did not create a new rule, however, that said that that is the sole basis by which assent can be required. There's the case laws replete with cases, both in California and in the district courts, and in the Ninth Circuit, that says continued, you know, if you're on notice, then continued employment does constitute acceptance of the agreement. So that's an important piece to this issue, is, you know, once you get past the mailbox rule, if the employee is, in fact, on notice, which is that's what the finding was at the district court, is receipt occurred, then the agreement has that purpose.  As I understand it, and I read the cases similarly, if there is notice of this arbitration agreement, you know, I think Avery and Craig both speak to this, and you continue to work there, then that could be an implied assent to those terms if you continue to work there. But I think to me the crucial question is, is there any evidence that he, any direct evidence that he saw this agreement, or, you know, if it weren't mailed to him? Is there anything else, you know, from the informational meetings or any other direct evidence that he may have seen it? So I would say that since I, you know, I actually believe, like I said, I think the same thing occurs, that there's this first step that needs to occur. And this is again where I would go back to the clearly erroneous standard, is the Court definitely made the factual finding that the mailing occurred. So separate from the second step of the mailbox rule as to whether receipt occurred, there was a finding the mailing occurred. And that can't be disturbed barring some sort of finding that it was clearly erroneous. And I think all so right now appellants trying to second-guess and saying, well, there's no direct evidence of this, and it's this, you know, patchwork or declaration. The Court went through that analysis and clearly established that the mailing occurred. But that was at the presumption phase of it. I'm sorry? That was at the presumption phase of the analysis.  But the Court never made a factual finding that the letter was mailed, actually mailed. It dealt with the presumption and said the presumption was not rebutted. The presumption doesn't come into play unless the finding is made that the mailing occurred. The result of the rebuttable presumption associated with the mailbox rule is that once we've determined that a mailing occurred, we're going to presume receipt. But the Court made the factual finding that the mailing occurred. And then it said, okay, now we've made this factual finding. Okay. Where in the course order did it say the mailing actually occurred? What did it say? Marshall's presents the testimony on page 8, page ER8. That's the testimony that establishes the presumption. Correct. And again, the presumption doesn't exist unless the Court has found evidence that the mailing occurred. But this is what the mailbox ruling is. I said I put a mail in the mailbox, and you say you didn't receive it. Because I have found that you put that letter in the mailbox and there is sufficient evidence to say that you put that letter in the mailbox, I am now saying, okay, we've met Evidence Code 604, that once you've established evidence that the letter went in the mailbox, now it's a rebuttable presumption that you received it. So the Court wouldn't engage in the mailbox rule analysis unless it had made the first step in finding that the mailing had in fact occurred. There would be no need to engage in mailbox rule analysis if the Court hadn't even reached the threshold question of did the mailing actually even happen. So that finding was made, and I think it's explicit, but it's certainly implicit by the actual application of the mailbox rule analysis. Okay. Can I ask you, I think you were asked this a couple times already, but just to be completely clear on your answer, your case turns on this whole question of the mailing. So if we don't agree with you that there was a mailing that was received, you're not, I take it that there aren't findings that you're saying could support affirmance on the basis of the postcard and the meetings and all that? If you'll briefly indulge me. Sure. I didn't get a chance to address Shiboya or Shibola or however you want to pronounce it. Could you just please answer the question? Are you taking the position that there is something other than the mailing? Yes. What in the record other than the mailing would have given notice to the plaintiff? The postcard and constructive notice. But I thought you said the District Court didn't rely on those. Well, I'm saying that this Court can rely on it if it doesn't apply an application to the mailbox rule. Okay. And in Shiboya, it deals with kind of four stages of what we call the browse wrap, the click wrap, the screen wrap, and then the sign-on wrap. And for browse wrap, which is basically, you know, we don't really know, there's really no information in the agreement. You're just scrolling through. Click wrap is I click and acknowledge. And then there's this one called sign wrap, which is it's all over the website. Like only a dummy wouldn't get it, but we never actually required you to click on something. And the Court in Shiboya said courts will find that that's enforceable. It's kind of this constructive notice concept that you were talking about. And then separately, I think Your Honor noted the issue about the postcard. It wasn't denied. You were put on notice that an arbitration agreement went out, and you either need to opt in or opt out. But the actual language of the postcard is not in the record, is it? No. The only thing that's in the record is the language from Sharon Simons, where she articulates what's in the agreement, and it was undisputed.  How applicable are these Internet-based contract cases at the end of the day? In my opinion, not at all. They seem a little bit far afield because, as you said, there are these different forms that the contract might take on the website and whether you have to click to another link and click an I accept button or not. To me, the more applicable cases seem to be Avery and Craig, where there's a threshold factual determination that either an employee handbook was received by someone or not. In Craig, because a trial court found that it was received, then there was this implied consent. In Avery, when the court found that an employee handbook was not received, the arbitration agreement was not enforceable. As I read those cases, there has to be at least some, even if not direct evidence, well, at least direct evidence of receipt or a factual finding, a threshold factual finding by a court about whether these things were in fact received or not. Right. And I think the problem – Do you agree with that or no? I do. And I think that what occurred here is the factual weighing did occur. There was a weighing that did this mailing occur or not. It did. The court found that and thus then went to the next step of applying the mailbox rule. And then once applying the mailbox rule, the presumption was rebutted by a declaration, and then the court engaged in a weighing exercise. And I understand that argument, but that would seem to undercut any notion of constructive notice because there it's not about constructive notice by someone. It's did you actually receive it, which isn't to say that you have to have read – it's not to say that you have to have read the arbitration provision. But if you received the document that contains the arbitration provision, then you might be constructively aware of it inside. But you need to have that determination of whether someone got the document or not. Agreed. And I think that issue was not considered or was not a basis for the court's decision in this case. I just wanted to address it because you were asking. I do think it's another basis why this agreement could have been found or the plaintiff could have been found to be on notice of it. But I agree it wasn't central to this case. If we come to the conclusion that the district court didn't actually weigh the evidence, would you be amenable to a remand for the district court to actually do that? I don't agree that that's what happened, and I don't think that would be the correct rule. But I'm asking you if we, the deciders of this case, determined that the district court did not weigh the evidence, would you be amenable to a remand for the district court to weigh the evidence? Not to be cute, but I'm not sure what the alternative option would be if you were to remand, assuming that that was your decision. Well, but that would be for the district court to find, to determine, not for you to determine the district court, what the district court's options would be. If we sent it back for the district court to reweigh it, I'm sure the district court would know what to do. For sure. I mean, not to disagree. I just wasn't sure exactly if there was some sort of alternative option. But, yes, if the court remands this case, then my presumption would be it would be on the idea that the evidence wasn't weighed and the court would engage in that weighing exercise more explicitly. But, again, I think that that's what occurred to me. But you would not be in favor of that? No, I think we should win. All right. Thank you, counsel. All right. Thank you. Mr. Bonner. So opposing counsel, I think, made the argument that the district court must have made a factual finding that the mailing occurred because he applied to presumption. And I think one case that shows that that's an erroneous logical conclusion is the Bunser v. Huntington Park case. Because in that case, they discussed the presumption. They essentially say the evidence of mailing was exceedingly weak. But they discussed the presumption. They say the presumption is rebutted. And, you know, in that particular instance, they went on to say that it would not be reasonable to have made a finding that there was mailing or receipt. And, you know, I think this case is actually pretty similar to Bunser in that respect. I mean, nobody's saying, I mailed it to Robert LaCour. You know, a patchwork of declarations, one of which is from a vendor essentially saying, my company did the mass mailing that Marshall's asked us to. And, you know, Mr. LaCour said I never received it. So, you know, that's our view is that the district court actually did not really make a finding on that. The district court appears to have relied on case law saying that, you know, denial of receipt without more is not sufficient to rebut the presumption. And so unless LaCour has any more questions, I will submit. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments.
judges: RAWLINSON, MILLER, SANCHEZ